## COOK v. HEISER et al.

No. 7225.   Decided June 30, 1949.   (207 P. 2d 807).

See 42 C. J., Motor Vehicles, sec. 1085.

*Rawlings, Wallace & Black* and *Dwight L. King,* Salt Lake City, for appellant.

*Ray, Quinney & Nebeker,* Salt Lake City, for respondents.

WOLFE, Justice.

This is an appeal from a judgment in favor of the respondents, Edwin F. Heiser, Sr., and Edwin F. Heiser, Jr., defendants below, in an action brought against them by the appellant, Henry Cook, plaintiff below, for the alleged wrongful death of the appellant's four year old son, Rodney K. Cook. The only assignment of error made by the appellant is that the lower court erred in denying his motion, for a new trial on the ground of insufficiency of the evidence to justify the verdict and that it is against law.

Mr. and Mrs. Henry Cook reside at 2844 Brinker Avenue, Ogden, Utah. Brinker Avenue runs north and south between 28th Street and 29th Street. The Cook home is on the east side of the street, facing west, near the middle of the block. On July 3, 1947, at approximately 7:30 p.m.. Rodney was playing across the street from the Cook home in a pile of sand situated between the gutter and the sidewalk in the driveway to a home occupied by a Chadwick family. The Chadwick home is at 2847 Brinker Avenue and is across the street west and slightly south of an east-west line drawn through the Cook home. The driveway where Rodney was playing is on the south side of the Chadwick home. Mrs. Cook, standing on the front porch of the Cook home, called to Rodney to come to her. He got up from his sitting position at the pile of sand and started across the street when he was struck by an automobile owned by Edwin F. Heiser, Sr., and driven by his minor son, Edwin F. Heiser, Jr. Rodney was taken to a hospital where he died within an hour after the accident.

There is substantial evidence to support the jury's finding that Edwin F. Heiser, Jr., hereinafter called Edwin, was not negligent in running into Rodney. Edwin testified that he had made a left turn onto Brinker Avenue from 28th Street and was proceeding south; that the automobile was in high gear at all times; and that he was not accelerating the automobile to its capacity. Brinker Avenue slopes

slightly toward the north so that Edwin was traveling up-grade. He further testified that there were no children playing in the street visible to him; that in front of the Chadwick home a car facing south was parked in the street; that as Edwin drove up alongside of this car Rodney "suddenly ran out in front" of the Heiser automobile; that there was no time to avoid hitting him; that Rodney was eight to ten feet away when he first saw him; that he applied the brakes the instant he saw the child and swerved the car slightly toward the west, striking Rodney with the left front light of the car; and that he thought his best chance to avoid hitting the child was to turn to the west rather than in the easterly direction in which Rodney was traveling.

The speed limit on Brinker Avenue is 25 m. p. h. Edwin testified that it was his best judgment that he was going 25 m. p. h., although on cross-examination he admitted he could have been going 30 m. p. h., but no faster. He denied that he had told the officers who investigated the accident that he was traveling between 30 and 35 m. p. h. He also denied that at the time of the accident he had not mentioned to the officers that the car which was parked in front of the Chadwick home had obstructed him from seeing Rodney sooner. As to this fact, Edwin testified that he told the officers that Rodney came out into the path of the Heiser automobile six or seven feet south of the parked automobile. On direct examination, Edwin estimated that Rodney was one-half of the distance from the west curb to the center of the street when first seen. On cross-examination he set the distance at twelve feet from the west curb. There is not a great difference in these estimates since Brinker Avenue is 40 feet wide. Edwin further testified that he was driving on the west side of the street with the left side of the car a foot or two west of the center line and that when he first saw Rodney he was in front of and about even with the center of his car.

There is nothing inherently incredible or unworthy of belief in the testimony of Edwin. Despite the contention

of the appellant that this is not a case of child darting out from behind a parked automobile, the jury could have reasonably found that Rodney did just that, or that as the child emerged from the obstruction of the parked car and came into the line of view of Edwin, Rodney was too close for the accident to be avoided. Because the Cook home was slightly north of the Chadwick driveway, Rodney may well have arisen from his sitting position in the driveway and proceeded not directly across the street, but rather diagonally to the Cook home. This course would take him closer to the parked car, prolong the time when he would not be visible to Edwin, and consequently, decrease Edwin's opportunity to have stopped. A four year old child can easily be obscured behind the front end of an automobile. Hence, Edwin's testimony that Rodney first came into view as the latter passed the parked automobile is not unreasonable under the circumstances even though the parked automobile may have been from twenty-five to thirty feet north of the driveway as contended by the appellant. The brakes on the automobile were tested by the investigating officers after the accident and found to be satisfactory. Edwin denied that he had told the officers that he had not applied the brakes after seeing Rodney.

Edwin's driver's license restricted him to the wearing of glasses while driving. He admitted that he was not wearing glasses when the accident occurred. Edwin testified, however, that he could see as well without glasses, if not better, than he could with them. Dr. Glen F. Hardy, an opthalmologist, who examined Edwin's eyes on October 3, 1947, testified that Edwin's right eye had normal vision, but that the vision of his left eye was five percent impaired. He expressed the opinion that the wearing of glasses by Edwin while he is driving an automobile would not materially help his vision. Edwin denied that he had told the officers that if he had been wearing his glasses the accident would not have happened.

While there is evidence in the record which would warrant the jury finding that Edwin was negligent in his opera-

tion of the Heiser automobile, the jury chose not to believe this evidence as they had a right to do. There being substantial evidence to support the judgment below, it must be affirmed. Costs to the respondents.

PRATT, C. J., and LATIMER and McDONOUGH, JJ., concur.

WADE, Justice (concurring).

I am not sure the evidence establishes that the parked car was between the driver and the boy at any time after the boy commenced crossing the street, so as to obstruct the driver's view of him. This would depend on many details, such as, how far the approaching car was from the boy and the parked car, and how far the parked car was from the boy and how far it was parked from the curb. Since the evidence on these details is not conclusive, I agree that it was a jury question in this respect.

The testimony of the driver, as stated in the prevailing opinion, suggests that he did not see the boy until he was out in the street in front of his car and so near that the collision was not avoidable. This suggests that the driver did not see the boy as soon as he could have after the boy emerged into the driver's view, for even though the parked car did obstruct the driver's view of the boy some of the time after he started to cross the street since the parked car was west of the approaching car, the boy would necessarily come into the driver's vision some distance before he was in front of the approaching car. But even though the boy did travel some distance into the street after he was within the vision of the driver before the driver saw him, I do not think we can hold as a matter of law that the driver was negligent. At least some of the time the parked car would be between the driver and the boy while he was playing in the driveway before he started to cross the street. There is no evidence that the driver knew or should have known that he was there or might cross the

street before he emerged into the street, at which time he probably was moving rapidly for a boy of his age. The fact that the driver did not see him as soon as he emerged into the street and into the driver's view, is not conclusive that the driver was guilty of negligence because the driver must keep a lookout over all the street in front of him and is not required to concentrate his full attention on that one spot until he has some warning that there is probable danger at that point. In determining this question, it must be kept in mind that the burden of establishing negligence is on the plaintiff, and we cannot hold the defendant negligent as a matter of law as long as the jury could reasonably find the facts the other way.